United States District Court
Southern District of Texas

**ENTERED**

June 04, 2019

David J. Bradley, Clerk

| | | |
|---|---|---|
| Aetna Life Insurance Company, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-14-900 |
| | § | |
| Won Yi, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Amended Opinion on Judgment

1.    *Facts.*

In 1998, Paragon Ambulatory Health Resources, LLC, and its related businesses engaged Physicians Auditing & Billing Services, Inc., for its billing and collections. The Paragon companies supplied mobile anesthesia during minor, in-office gynecological procedures. In 2010, Paragon began to issue franchises.

Won Yi is a board-certified anesthesiologist. In 2010, he acquired a Paragon franchise. He also owns these Paradigm entities:

Paradigm Ambulatory Medical Services, PA          Paradigm Services, LLC

Paradigm Anesthesia Services, PA          Complete Anesthesia Services, PA

Paradigm Ambulatory Associates, LLC

Aetna Life Insurance Company issues group insurance policies, including those that fund employer-sponsored health-benefit plans. It also serves as a third-party administrator for self-funded health plans. In either case, the insured receives specified benefits for covered health expenses – as defined by the plan. Aetna processes and pays claims.

2.    *Plans.*

Aetna's plans distinguish between medical providers who have a fee agreement with it and those who do not. Those providers who are covered by an agreement are called in-network; the others are obviously out-of-network. Medical billing levels have considerable variability by

geography – urban or suburban, nature of the service, and administrative burden. With many services, Aetna agrees to pay bills submitted by those that commit to a fee schedule. Both categories of services must comply with the non-price conditions of the plans. Some of these are that the providers must collect co-pays and deductibles, and charge reasonable fees for necessary services.

By joining Aetna's network, Aetna can reliably and quickly evaluate and pay claims. This reduces both sides' administrative costs, and it accelerates their cash flows. Further, a patient who gets care from an out-of-network provider is likely to pay more than if he were using a network one. The non-network charge commonly exceeds Aetna's estimate of the reasonable market value for the care supplied.

Aetna and Yi have not agreed to a fee schedule. None of Yi's affiliates has agreed. They are all out-of-network providers.

3.      *Scheme.*

Yi uses a billing model that was developed by two people: (a) Paragon Ambulatory Health Resources's owner, Neal Fisher, and (b) Physicians Auditing's owner, Vicki White.

Yi established the Paradigms to submit medical bills under a range of tax identification numbers and names. For each patient seen, Yi would present two claims to Aetna: (a) a professional fee to administer the anesthesia and (b) a facility fee. Paradigm would bill Aetna $10,000 to $15,000 per procedure, while billing the patients $600. Paragon would collect a royalty and other fees based mostly on a percentage of Yi's collections; Physicians Auditing took eight percent of Yi's collections.

The law requires that medical services only charge proper, reasonable, and medically necessary fees.[1] They are barred from knowingly (a) presenting a false claim for payment under an insurance policy and (b) charging two different prices for the same service – with the higher price based on the existence of insurance coverage.[2]

The defendants submitted wholly dishonest claims. Aetna paid them based on the reasonable belief that each of the bills reflected that the service had complied with (a) the

---

[1] Tex. Health & Safety Code Ann. § 311.0025(a).

[2] Tex. Occ. Code Ann. § 105.002; Tex. Ins. Code Ann. § 552.003(a)(1)-(2).

clinic's obligations that condition its right to payment and (b) having disclosed a true, accurate, and complete bill for the service actually done.

Aetna sues Physicians Auditing, Paragon, Yi, and the Paradigms for (a) money had and received and (b) relief under the *Employee Retirement Income Security Act*.

4.    *Money Had and Received.*

A claim for money had and received depends of Aetna's having paid money to the defendants by mistake.

Assume that, based on Paradigm's bill, Aetna pays $1,000 for 60 widgets. When it later discovers that it received only 30 widgets, it may recover $500 that Paradigm got for the undelivered widgets. That money belongs to Aetna. Aetna has shown that the defendants have been paid money in pretend reliance on the billing company that – in simple equity – belongs to Aetna.[3]

A.    *Professional Fees.*

Paradigm's formula for anesthesia charges is: (base units + time units) x (unit rate). In other words, a starting fee is increased for time. This may sometimes be a reasonable proxy for complexity. That total is increased by its unit rate.

Aetna's standard time allowance is based on fifteen-minute intervals. The time starts when the anesthesiologist is ready to induce the patient and ends when the anesthesiologist is no longer directly, physically tending to the patient – after the patient is safely placed under post-operative supervision.

Compared to Aetna's standards, the defendants used base units inexplicably higher than Aetna's. They billed 10-minute units that were conventionally 15-minutes. They increased the customary unit price by one-third.

Yi routinely reported false anesthesia time – he typically reported sixty or more minutes for a twenty to thirty minute procedure. Yi conceded that his entities reported time when an anesthesiologist was not directly tending to the patient.

---

[3]  3 J. Pomeroy, Equity Jurisprudence §§ 869, 910 (5th ed. 1941); *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951); *City Bank of Hous. v. First Nat. Bank of Hous.*, 45 Tex. 203, 217-18 (1876).

While the Paradigms billed Aetna $5,000 to $8,000 for these, they charged the patients a flat fee of $600. They earned $600 per patient from Aetna – and cheated Aetna out of the balance.

Aetna overpaid professional charges on 750 treatments. It will recover $1,740,672.42, the amount paid in excess of $600 per claim.

### B. *Facility Fee.*

Under Aetna's plans, an anesthesiologist may receive a professional fee for his work; he may also submit reimbursement claims for anesthesia supplies and drugs. Separate claims for equipment, the room, and other facility charges are not covered for procedures in the office.

Yi adopted Paragon's practices and filed claims for mobile anesthesia equipment. He represented to Aetna that Paradigm – a wholly unlicensed operation – was the provider and used billing codes to indicate a professional had served the patients. Yi says Paradigm administered professional services for "unusual" anesthesia. For each procedure, Aetna was charged an additional $6,500 that the patient was not charged. Once Aetna discovered that Paradigm charged facility fees, it denied its claims.

None of the entities billing for facility fees is properly licensed. Aetna's plans and policies do not cover Paradigm's bills for facility fees. Aetna will recover $347,972.02 for what it paid on facility fee claims.

### C. *Liability.*

Joint and several liability applies when each party is independently liable for part of the injury to which his own conduct contributed. That is, where people cause an injury that cannot be apportioned with reasonable certainty among specific wrongdoers, they are each liable for it all, jointly and severally.[4]

Paragon and Physicians Auditing developed the template to cheat insurance companies. The entire business model was centered on creating multiple limited liability companies to submit medical claims to insurance companies, masking the volume of claims generated by Yi. Yi and the Paradigm entities adopted the template and paid Physicians Auditing a royalty from

---

[4] *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 654 (Tex. 1996); *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1095 (5th Cir. 1973).

revenue generated. All of the defendants were directly compensated under this scheme, and they are jointly and severally liable for Aetna's damages of $1,740,672.42.

5.    *Voluntary Payment.*

The defendants assert that Aetna's voluntary payment defeats its claims; however, they did not plead voluntary payment. Assuming they had, Aetna would still recover its money. Nothing suggests that Aetna knowingly paid the facility or other charges with the intent to waive its rights to recover for errors and cheating. Aetna reviewed and relied on the incomplete, mis-labeled, and fictional facility claims. Yes, Aetna might have discovered the thieves earlier; however, that is like a burglar saying that it is not liable for stealing from a house because the owners could have locked the door. Being slow to catch a pen-and-paper bandit is not waiver, consent, gift, or entitlement.

6.    *ERISA.*

The defendants have counter-sued saying that Aetna has violated the regulatory scheme. It did not. A medical service provider may contest the denial of charges in an appeal administratively. They would need to prove that their separate charges for mobile anesthesia equipment and technical services are covered and payable under the terms of the plans.[5]

Aetna has established that these separate charges are not authentic. The plans do not cover charges for transporting and installing mobile anesthesia or other office-level equipment. The plans also do not pay claims submitted by unlicensed providers. The plans do not cover bills that are twelve times higher than they should be.

Without facts, the defendants insist the plans are not representative. They billed Aetna's plan, not a statistically standard plan. They have offered no other plans with language that shows their equipment charges are covered. They also say the plans do not clearly exclude equipment. The issue is whether their services are covered under Aetna's plans, and they are not. Simply put, Aetna's denial of the claims is fully consonant with its plans and ERISA.

---

[5] *Perdue v. Burger King Corp.,* 7 F.3d 1251, 1254 (5th Cir. 1993).

7.    *Conclusion.*

Dishonest bills, fake standards, and irregular medicine caused Aetna to pay money to these defendants. Aetna will recover the overpayments of $1,740,672.42 and facility fees of $347,972.02 jointly and severally from:

> Won Yi;
>
> Paradigm Services, LLC;
>
> Complete Anesthesia Services, PA;
>
> Paradigm Anesthesia Services, PA;
>
> Paradigm Ambulatory Associates, LLC;
>
> Paradigm Ambulatory Medical Services, PA;
>
> Physicians Auditing & Billing Services, Inc.; and
>
> Paragon Ambulatory Health Resources, LLC.

Aetna will also recover its attorney's fees in a separate hearing. Won Yi; Paradigm Services, LLC; Complete Anesthesia Services, PA; Paradigm Anesthesia Services, PA; Paradigm Ambulatory Associates, LLC; Paradigm Ambulatory Medical Services, PA; Physicians Auditing & Billing Services, Inc.; and Paragon Ambulatory Health Resources, LLC, will take nothing from Aetna.

Signed on June __3__, 2019, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge